JOHN L. ANDERSON, plaintiff in error, vs. RICHARD T. WALTON, defendant in error.

[1] Abatement in the rigor of the law, as respects sureties. Modern decisions regarded in interpreting old law.

[2] Demurrer to bill, admits allegations in the latter to be true.

The principal in a judgement being insolvent, and having, after rendition of the judgment, sold property, an injunction against the purchaser, who was about to remove the property from the County, was properly granted at the instance of the surety.

[3] In such case, the surety is entitled to the injunction without first paying the debt.

[4] Impure pleas must be sworn to; and certain pleas in this case were of that character. Certain other pleas properly overruled.

In Equity. In Wilkes Superior Court. Demurrer to Bill,

and Demurrer to Plea. Decided by Judge WILLIAM M. REESE. September Term, 1866.

On the 9th of November, 1865, Walton, the defendant in error, filed his Bill in Wilkes Superior Court against Anderson, the plaintiff in error, making the following case:

A judgment was rendered in said Court, at March Term, 1861, in favor of Nicholas Taliaferro, against Phebe Stinson, as principal, and Walton, as security, which is still unpaid, and Mrs. Stinson is insolvent. The stay-law was in force at the rendition of the judgment, and the stay-ordinance of the Convention was operating at the time of filing the bill.

Anderson, well knowing of the judgement and its lien, purchased of Mrs. Stinson eighteen bales of cotton, which he mixed with his own cotton, so that the same cannot, by any means in complainant's power, be distinguished and identified. He is removing said cotton beyond the limits of Wilkes county, to market, having some of it upon the cars for that purpose, at the time the bill was filed. The whole of the eighteen bales, at the ordinary price, would be insufficient to pay off the judgment.

The bill prayed for discovery and general relief, and especially for an injunction restraining Anderson from selling the cotton or removing it from the county, until after he should give bond and security for its forthcoming to answer and satisfy said judgment.

The Judge sanctioned the bill, and ordered an injunction requiring Anderson "not to remove said eighteen bales of cotton, until he shall have given bond and security for the forthcoming of the same, or the proceeds thereof, to answer the final judgment in this case."

The defendant demurred to the bill on several grounds.

(1) For want of Equity. (2) Because the remedy at law was complete. (3) Because a copy of the judgment and fi. fa. was not attached to the bill as an exhibit. (4) Because no affidavit had been made by complainant to entitle him to proceed under the stay-law and stay-ordinance. (5) Because the

complainant had not paid off and taken control of the fi. fa. (6) Because no injunction was in fact sued out as prayed for, nor any bond given by complainant as required by law. (7) Because there was not, and never had been, any law to prohibit a levy of the execution on the cotton. (8) Because it was not alleged that any judgments were against Phebe Stinson older than the one in question.

The Court overruled the demurrer.

The defendant also filed several pleas:

1. That he was a *bona fide* purchaser of the cotton for valuable consideration, without notice of the judgment or the lien thereof, and had been in possession of the cotton more than two years before the filing of the bill.

2. That complainant does not appear, by the said judgment and execution, to be surety, but a joint principal; and that the judgment, if controlled by him as surety, would not interfere with defendant, a *bona fide* purchaser without notice, whose rights were vested before any order giving the control to complainant has been granted.

3. That complainant is not surety, but a principal.

4. That, even if a surety, he has never paid off the fi. fa. and taken control of it.

5. That there never has been any law that could prohibit a levy on the cotton, if subject.

The complainant demurred to these pleas as presenting no sufficient defence, and, moreover, to each of them specially, as follows:

To the first, as proper matter for answer and not for plea, except as to the alleged possession by defendant for two years; and, as to that, as being insufficient, because the statutes of limitation were suspended.

To the second and third, as matter for answer or demurrer, and not for plea.

To the fourth and fifth, as matter for demurrer, and not for plea.

The Court sustained the demurrer to the fourth and fifth pleas, but decided the first, second and third to be good and

sufficient, if supported by a sworn answer, and ordered them each to stand for an answer, provided the defendant would swear to them.

Both parties excepted; Anderson alleging error in overruling the demurrer to the bill, in sustaining the demurrer to the fourth and fifth pleas, and in requiring the first, second and third pleas to be sworn to; and Walton alleging error in holding these pleas sufficient, if sworn to.

ANDREWS and ALEXANDER, for Anderson.

BARNETT & BLECKLEY, for Walton.

HARRIS, J.

[1] The case of plaintiff in error has been very elaborately argued; and we have been called on, by the distinguished counsel representing him, to enforce the rigid decisions of the common law of the last century, in reference to securities. We will go into no argument now, nor review the decisions cited, or read, to demonstrate, as could be easily done by reference to elementary treatises issued from the British press within the last twenty years, how greatly the old rules have been relaxed, and old decisions modified. Bound, as we are, by the principles of the common law as they existed at the time of our adopting Act, yet we shall not hesitate to avail ourselves of the invaluable light which modern decisions and elementary works have furnished, in interpreting what are called old principles. But the statutory legislation of Georgia, for the last forty years, when viewed apart from the common law, in its collective spirit, its continued progress, is so marked by tenderness for securities and endorsers that it has sought, in almost every conceivable mode, to give them protection, and the ample use of the process of the Courts for such purpose, and, especially, to avert apprehended loss.

[2.] Obeying the spirit of our own legislation, it is difficult for us to perceive how the Circuit Judge, upon the

facts, alleged in the bill of Walton, and sworn to, could withhold his injunction restraining the sale of the cotton by the plaintiff in error, though he was a purchaser for a valuable consideration, as the cotton was unquestionably affected by the judgment of Taliaferro, obtained in 1861.

Whether the defendant in error was a security or not for Mrs. Stinson, will doubtless arise hereafter, and be decided by proof. It is, however, so alleged in the bill, and the demurrer of plaintiff in error precludes him from denying it. If a security, and the facts alleged in his bill are true,—and the demurrer admits them to be true,—we have not the slightest doubt that Walton was entitled to the aid of a Court of Equity in trying to save his property from satisfying Taliaferro's execution, when Mrs. Stinson had property in the hands of Anderson, (she being insolvent) bound by the judgment of Taliaferro, and which ought to be applied to its discharge.

[3.] We think Judge Reese did not err in overruling the demurrer; holding, as we do, that the peculiar facts set forth in the bill for discovery, injunction and relief, entitled a security placed in the situation of Walton—and that without paying up Taliaferro's execution—to claim and have the restraining power of the Judge of the Superior Court, against the sale or removal of the cotton liable to and bound by the judgment of Taliaferro, so as to prevent a serious loss to him, there being no adequate remedy at law, and this too, notwithstanding the inaction of Taliaferro, from whatever supposed legal obstacle it may have proceeded.

[4.] The record shows that six pleas were filed by Anderson, none of which were sworn to. Four were ordered to stand for an answer, upon being sworn to; the other two were dismissed as embodying matter proper only to be considered by way of demurrer. The four pleas referred to, when examined, will be found to be what our Code denominates as Impure pleas, and must, in all case, be sworn to. Nor was there error in dismissing the other two pleas, for the reason assigned.

Judgment affirmed.